**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY O'SHEA, on behalf of himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SOLAR SOLUTION, INC., a California corporation,<br><br>Defendant. | Case No. 14cv0894L RBB<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Kerry O'Shea ("Plaintiff") hereby opposes the *ex parte* application for leave to file a Motion for Summary Judgment filed by Defendant American Solar Solution, Inc. ("Defendant") as set forth below.

## I.   Introduction and Summary of Argument

Defendant cannot, in good faith, establish the required good cause for the Court to grant Defendant's *ex parte* application.

First, the telephone dialing equipment used by Defendant to place the offending calls is an automatic telephone dialing system ("ATDS") and is not a contested issue in this case. Defendant, throughout the pendency of this case, has admitted that its ViciDial predictive dialer, the telephone dialing equipment used to place the offending calls, is an ATDS, and Defendant has agreed not to contest this element of Plaintiff's case. Defendant has made these admissions in written discovery, in deposition testimony, in its own motion for summary judgment filed on August 17, 2016 (Dkt. No. 74), and in the Parties' Statement of Facts to which the Parties' Stipulation which was filed as Exhibit C to the Parties' Proposed Joint Pretrial Order.

Second, the March 16, 2018 ruling in *ACA International v. Federal Communications Commission*, 855 F.3d 687 (D.C. Cir. 2018) and the ruling in *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJG, 2018 WL 2229131 (D. Ariz. May 14, 2018) *appeal filed* June 7, 2018, did not change the law, nor do they clarify or narrow the definition of ATDS as Defendant suggests. These ruling also do not change the facts of this case, that Defendant used the ViciDial predictive dialer, which is an ATDS, to place the offending calls to Plaintiff and the Class.

Third, Defendant never provided *ex parte* notice that it would move the Court for the requested relief in violation of the Standing Order for Civil Cases before the Honorable M. James Lorenz.

Fourth, Plaintiff and the Class will be severely prejudiced if this Court grants Defendant's requested relief.

1

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

Thus, because Defendant's *ex parte* application fails, both factually and procedurally, and Defendant's application must be denied.

## II. Defendant Has Shown No Ground for Ex Parte Relief

### A. Defendant Has Repeatedly Admitted that its ViciDial predictive dialer is an ATDS.

Throughout the pendency of this lawsuit, Defendant has never challenged its use of an "automatic telephone dialing system," an ATDS, as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1).[1] Thus, it came as a shock when Defendant, for the first time, significantly after the close of discovery and the passing of the time to file for summary judgment, filed the instant request because Defendant has repeatedly admitted to using an ATDS to call Plaintiff and the Class. Defendant did not even assert in its Answer as a legal affirmative defense that it did not use an "automatic telephone dialing system," (Dkt. No. 19), and did not contest it in the Parties' Pre-Trial Order, so how can it now?

To provide a few examples of Defendant's admissions, Defendant stated as follows in written discovery:

Plaintiff's Interrogatory No. 9 stated, "If YOU contend YOU do not use an automatic telephone dialing system to make any of the PHONE CALLS to PLAINTIFF or to the CALL RECIPIENTS, state the facts in support of that contention, including the type of TELEPHONE DIALING EQUIPMENT used to make those calls." In response, Defendant stated and verified, "Defendant is not making the stated contention in this interrogatory at this time. Defendant reserves the right to amend this response as discovery is continuing." *See* Declaration of Ronald A. Marron ("Marron Decl."), Ex. 1. But Defendant never amended its response during the pendency of this case, and discovery closed on August 17, 2016. (*See* Dkt. No. 61.)

---

[1] The term "automatic telephone dialing system" means equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The definition as remained the same since the TCPA became effective in 1991.

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

Plaintiff's Interrogatory No. 4 stated "IDENTIFY the DATE and time of each PHONE CALL YOU made to PLAINTIFF and each CALL RECIPIENT during the RELEVANT TIME PERIOD."  In response, Defendant stated and verified, after identifying the 15 calls to Plaintiff, "[w]ith respect to the other call recipients, Defendant produced all call logs in its possession, custody, and control on March 9, 2016 as Exhibit "A" to Defendant's Amended Responses to Plaintiff's Request for Production, Set One. Those call logs identify each and every phone number that Defendant called during the relevant time period (April 15, 2010 to the present), as well as the date and time each call was made. To the extent any additional call logs exist, they are believed to be in the possession of Tal Bahir …who provided the *auto dialers* to Defendant and maintain the call logs.  However, Defendant has bene advised by Mr. Bahir that all call logs have been provided, which Defendant has in turn produced." Marron Decl., Ex. 2.

In Plaintiff's Requests for Admission Nos. 1-20, Defendant admitted to using an autodialer to contact Plaintiff, and that same dialer was used to contact the Class. Specifically, when Defendant was asked to "Admit that YOU called Plaintiff's cell phone number (XXX-XXX-6734) on August 29, 2013 using a DIALER[,]"[2] in Request for Admission No. 1, Defendant responded "Admit." *See* Marron Decl., Ex. 3.  And the same was true for Requests for Admissions Nos. 2-16 as it referenced the different dates that Defendant called Plaintiff with an autodialer.  *Id.* Additionally, Defendant admitted in response to Request for Admission No. 17, that "[it] used the same DIALER to place calls during the RELEVANT TIME PERIOD."  In response to Request for Admission No. 18, Defendant "admit[ted] that an automatic telephone dialing system was used during the relevant time period to make phone calls."  *Id.*

---

[2] "Dialer" was defined in Plaintiff's discovery requests to "mean[] or refer[] to to any TELEPHONE DIALING EQUIPMENT that can make telephone calls in an automated or automatic fashion, wherein a telephone call can be dialed by a machine, COMPUTER, or COMPUTER SYSTEM, INCLUDING TELEPHONE DIALING EQUIPMENT known as a "predicative dialer" or an "autodialer." Defendant did not object to this definition. *See* Marron Decl. at ¶ 4.

3

*O'Shea v. American Solar Solution, Inc.*, No.  14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

In oral discovery, while discussing the difference of predictive dialing with placing a call manually with a PBX (which is like a desk phone), Defendant admitted to "cold calling" consumers without consent on the predictive dialer and confirm that it utilized 3 autodialers to make the calls. *See* Marron Decl., Ex. 4 (125-128).

Defendant even stated in its motion for summary judgment, that this Court denied, that "there is no real dispute that that American Solar called Plaintiff's cellular telephone using an automatic telephone dialer" (Dkt. No. 74-1 at 8:20-24), which was the same equipment that was used to call members of the Class. Additionally, as part of the Parties' Joint Statement of Undisputed Material Facts that was filed with Defendant's Motion for Summary Judgment, Defendant did not dispute that it "loaded [numbers] into its ViciDial predictive dialers and proceeded to make solicitation calls to hundreds and thousands of consumers via the ViciDial predictive dialers (Dkt. No. 78 at No. 31), that Defendant "placed calls using the ViciDial predictive dial[er] from November 22, 2012 through August 22, 2015" (Dkt. No. 78 at No. 32), and that Defendant "stopped making telemarketing calls with an autodialer in 2015." (Dkt. No. 78 at No. 37.)

Moreover, in Plaintiff's Motion for Summary Judgment, which addressed the number of calls made, and whether Defendant's TCPA violations were negligent or willful, Defendant did not even contest that the calls at issue violated the TCPA (i.e., that they were made with an ATDS), Defendant only contested the number of calls and whether the violations were willful triggering trebled damages. *See* Dkt. Nos. 116-1 and 129. The Court's May 21, 2018 Order denying the motion also noted, "Here, there appears to be no dispute as to the facts that (1) Defendant used an ATDS to place telemarketing calls to cell phones and (2) Defendant has no evidence tending to suggest it had prior express consent to make said calls. Rather, the issue is damages." (Dkt. No. 138 at p. 3.)

Last, and most significantly, in the Parties' Proposed Joint Pre-Trial Order submitted on October 9, 2017, the Parties including the following statement:
> "Plaintiff claims that he and the Class members received illegal telephone calls to their cellular telephones. The TCPA is a strict liability statute. To

4

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

trigger the TCPA, it suffices to show that Defendant used an automatic telephone dialing system to call a cell phone. 47 U.S.C. § 227(b)(1)(A)(iii). **Defendant has already admitted that is called Plaintiff and Class Members with an automatic telephone dialing system."** (emphasis added).

Additionally, in the defense section of the filing Defendant's position was that it "reserves the right to dispute damages on the ground that Defendant did not act knowingly or willfully." Thus, said differently, Defendant's defense does not include that it dialer was not an ATDS and does not include that it did not act negligently.

Defendant has already admitted to using an ATDS to place the calls to Plaintiff and the Class. Defendant cannot change its position in the eleventh hour, after the close of discovery, as this is highly prejudicial to Plaintiff, and as discussed below, case law from this year does nothing to change the definition of an ATDS and does not impact this case.

**B.  The Definition of an ATDS has Remained Unchanged and Rulings from 2018 Do Not Impact This Case.**

Defendant attempts to argue that rulings from March and May of this year, neither of which addressed the ViciDial predictive dialer used by the Defendant here, somehow impact this case. Defendant is wrong. The TCPA mandated that the FCC "prescribe regulations to implement the requirements" of the TCPA. 47 U.S.C. § 227(b)(2). The FCC has done so through a various rulemaking and declaratory rulings addressing the TCPA. The case *Reyes v. BCA Financial Services, Inc.*, -- F. Supp. 3d --, 2018 WL 2220417 (S.D. Fla. May 14, 2018) correctly and succinctly summarizes prior rulings from the FCC regarding the definition of an ATDS.

> "Pertinent here, in 2003, the FCC issued an order finding, among other things, "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003). The 2003 FCC order defined a

5

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." *Id.* at 14143 n. 31.

In the 2003 FCC order, the agency explained that "[m]ost industry members that commented on the issue of autodialed calls argue that predictive dialers do not fall within the statutory definition of 'automatic telephone dialing system,' primarily because, they contend, predictive dialers do not dial numbers 'randomly or sequentially.' " *Id.* at 14090. Instead, according to those opponents, "predictive dialers store pre-programmed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers." *Id.* But consumers and consumer groups, on the other hand, argued "that to distinguish technologies on the basis of whether they dial randomly or use a database of numbers would create a distinction without a difference." *Id.*

The FCC sided with the consumers, finding "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14093. As the FCC explained: The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation.
*6 *Id.* at 14091 (internal citations omitted).

The FCC continued that, although "[i]n the past, telemarketers may have used dialing equipment to create and dial 10–digit telephone numbers arbitrarily," since then "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." 18 FCC Rcd. at 14092. And yet "[t]he basic function of such equipment...has not changed—the *capacity* to dial numbers without human intervention." *Id.* The FCC

further reasoned that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result." *Id.* at 14092.

In 2008, the FCC issued a declaratory judgment that "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008). The petitioner under that ruling argued, among other things, that the FCC's "determination that predictive dialers fall within the meaning of the statutory definition of 'automated telephone dialing equipment' was incorrect and conflicts with the language of the TCPA." *Id.* at 563. The petitioner argued that the FCC erred because "debt collectors use predictive dialers to call specific numbers provided by established customers." *Id.* at 566. Therefore, according to the petitioner, "a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." *Id.*

The FCC disagreed. It summarized and reaffirmed the findings of its 2003 order. *Id.* at 566. And it then added that the petitioner "raises no new information about predictive dialers that warrants reconsideration of these findings." *Id.* at 566–67.

And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

7

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

*Reyes v. BCA Fin. Servs., Inc.,* No. 16-24077-CIV, 2018 WL 2220417, at *5–6 (S.D. Fla. May 14, 2018) (discussing FCC Orders on ATDS in granting plaintiff's motion for summary judgment finding that the predictive dialer used by the defendant was an ATDS).

Plaintiff does not dispute the binding effect FCC Rulings have on this Court, but as discussed above, Defendant's ViciDial predictive dialer is an ATDS, and Defendant cannot dispute that in good faith.  While the *ACA International* ruling may have invalidated certain portions of the 2015 FCC Ruling, the 2003, 2008 and 2012 Rulings remain unchanged.  *See Swaney v. Regions Bank*, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (citing *ACA International*, 885 F. 3d at 702) (granting partial summary judgment in favor of plaintiff on the ATDS issue).

Defendant cites *Herrick v. GoDaddy.com LLC*, No. CV-16-00254-PHX-DJG, 2018 WL 2229131 (D. Ariz. May 14, 2018) for the proposition that the text message platform in that case, which is different from the ViciDial predictive dialer used by Defendant here, was not an ATDS because it could not "randomly or sequentially generate numbers to be dialed."  However, this out of district case is easily distinguishable.  *Herrick* is a text messaging case, not a calls case, and thus did not address a predictive dialer or ViciDial.  Moreover, an appeal with the Ninth Circuit was filed on June 7, 2018.  Thus, arguably the District Court got it wrong.  Defendant also passively cites *Marks v. Crunch San Diego*, but this also is a text message case and an appeal is pending in the Ninth Circuit.

Moreover, Plaintiff's Expert, submitted a comprehensive expert report (Dkt. Nos. 116-7 & 116-8), which describes and opines on the ViciDial predictive dialer, of which the Expert has used for many years.  At no point during this case did Defendant offer its own expert or provide its own report on the ViciDialer because Defendant did not dispute that it's dialer was an ATDS.  Regardless, Plaintiff submitted Mr. Hansen's Report which contains details about the ViciDial predictive dialers used by Defendant – including that "ViciDial is a predictive dialer that, like other predictive dialers, calls lists of numbers

8

*O'Shea v. American Solar Solution, Inc., No.* 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

organized as "campaigns." (Dkt. No. 11-7 at ¶ 24); "The ViciDial predictive dialer can be used to make predictive dialed calls along with delivering agent-less calls by automatically calling a list of numbers." (*id.*); "The ViciDial predictive dialer is capable of dialing a list of numbers loaded into a "campaign" or "pool" on the dialer." (*id.*); "The ViciDial predictive dialer then can automatically dial those numbers and deliver predictive dialed calls or agent-less calls." (*Id.*); and "For predictive dialed calls, the ViciDial predictive dialer will call using multiple telephone lines per agent, and it will use all available telephone lines when making agent-less calls." (*Id.*).

Thus, even with rulings from March and May of this year, the definition of ATDS remains unchanged. There are no "new facts" that would or could change the fact that Defendant's ViciDial predictive dialer is an ATDS, and case law looking at different dialers does not change anything here.

## C. Defendant Never Provided Notification It Would Be Moving The Court Ex Parte and Plaintiff Will Suffer Prejudice if the Court Grants Defendant's Requested Relief

Procedurally, Defendant never notified Plaintiff that it would be moving the Court *ex parte* to request leave to file a motion for summary judgment. While Defendant's counsel did discuss the rulings in *ACA International* and *Herrick* with Plaintiff's counsel, that was no indication that Defendant would seek the requested relief.

In one call between Kas Gallucci, Plaintiff's counsel, and Ken Ito, defendant's counsel, Ken jokingly said that he thought that *ACA International and Herrick* changed the definition of autodialer. Plaintiff's counsel disagreed, informed Mr. Ito that *Herrick* was a text messaging case, not a calls case using a predictive dialer, and pointed out that in this case Defendant was not contesting the use of an ATDS anyway. In response, Mr. Ito agreed that his client did not contest ATDS. Declaration of Kas L. Gallucci, ¶ 2.

On the June 6, 2018 call between Mr. Marron and Mr. Ito, Mr. Ito asked if Defendant would stipulate to allow Defendant to file a motion for summary judgement, to which Mr. Marron stated Plaintiff would oppose – indicating the definition of ATDS

9

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

had not change, and the time for summary judgment had long passed, even noting that the rulings Defendant intended to move on were not recent. Marron Decl. ¶¶ 6-8.

During both of these calls, Defendant never informed Plaintiff's counsel that it would be moving the Court *ex parte* to file such a motion, and thus Defendant motion procedurally fails.

**D.   Plaintiff and the Class Will Be Prejudiced.**

An *ex parte* application is "a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief." *Clark v. Time Warner Cable,* 2007 WL 1334965, at *1 (C.D. Cal. May 3, 2007).  It must also show that it will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and that he is without fault in creating the alleged "crisis." *See Cal. Prac. Guide Fed. Civ. Pro. Before Trial* (The Rutter Group 2017) ¶ 12:170.  Defendant has failed to make these showings.  Defendant's *ex parte* application contain no showing of any "crisis," irreparable injury, or explanation why emergency relief is necessary, or why Defendant purportedly is without fault, or can otherwise explain any delay in changing its position on ATDS.  Defendant has admitted to using an ATDS to place the calls in discovery, through Court filing and in admissions in open Court. Defendant cannot change its litigation position in the eleventh hour as to an uncontested fact.  Such sandbagging litigation tactics should not be award, and it would be within the Court's discretion to issue sanctions against the Defendant.  Plaintiff will suffer grave prejudice by having to oppose a meritless motion for summary judgment, and waste time and resources otherwise spent for preparing for trial or negotiating a settlement before Judge Brooks.

### III.   Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's *ex parte* application.

Respectfully submitted,

DATED: June 8, 2018               */s/ Ronald A. Marron*

10

*O'Shea v. American Solar Solution, Inc., No.*  14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT

|   |   |
|---|---|
| 1 | RONALD A. MARRON |
| 2 | **LAW OFFICES OF RONALD A. MARRON** |
| 3 | 651 Arroyo Drive<br>San Diego, California 92103 |
| 4 | Telephone: (619) 696-9006<br>Facsimile: (619) 564-6665 |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

11

*O'Shea v. American Solar Solution, Inc.*, No. 14cv0894L RBB
PLAINTIFF'S OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT